IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

ERNEST WILLIAM JOINER and
JOINER-SIGLER INSURANCE AGENCY, INC.                       PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 2:10cv235KS-MTP

PERFORMANCE INSURANCE SERVICES, INC.;
TIMOTHY ALLEN CRAIG; and JOHN DOE
DEFENDANTS 1-100                                           DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss and Compel Arbitration or Transfer Venue **[#7]** filed on behalf of the defendants.  The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion to compel arbitration and dismiss is well taken and should be granted.  The court specifically finds as follows:


## FACTUAL BACKGROUND

The defendants are Performance Insurance Services, Inc. ("Performance") and its president, Timothy Craig ("Craig") (together, "Defendants").  Performance is an Indiana corporation located in Carmel, Indiana, and Craig is an Indiana resident.  Plaintiffs are Joiner-Sigler Insurance Agency, Inc. ("Joiner-Sigler") and its president, Ernest William Joiner ("Joiner") (together, "Plaintiffs").  Joiner-Sigler is a Mississippi corporation doing business in the State of Mississippi, and Joiner also does business in Mississippi.

On or about February 18, 2008, Performance and Joiner-Sigler entered into the Producer Agreement ("Agreement"). Pursuant to the Agreement Joiner-Sigler, through Joiner, solicited business on behalf of Performance insurance issued by, among others, Lloyd's of London. Joiner solicited and submitted approximately 80 insurance policies issued by Lloyd's of London. Plaintiffs allege that they charged an inspection fee on each policy they solicited, and later discovered that Performance also was assessing an inspection fee on each policy "regardless of whether or not an inspection was being performed."

Plaintiffs assert that Joiner contacted Performance to ask about the inspection fees, but that Performance did not provide any explanation. On June 8, 2009, more than a year after entering into the Agreement, Plaintiffs filed a complaint with the Mississippi Department of Insurance concerning the inspection fees. On June 15, 2009, Performance sent Plaintiffs a letter stating that, effective July 16, 2009, the Agreement would be terminated under section 12 of the contract.

Under the Agreement, Joiner-Sigler agreed to solicit and produce insurance business in Mississippi on behalf of Performance. As consideration, the Agreement provided that Joiner-Sigler would be paid commissions on policies actually written. The relationship was not exclusive, and the Agreement allowed Performance to enter into similar agreements with other agents at any time. The Agreement also allowed either party to terminate the Agreement "with or without cause." Specifically, it states that it could be "terminated by mutual agreement of the parties hereto, without notice, or by either party, with or without cause, upon not less than 30 days prior written notice delivered by the terminating party to the other party." In other words, any party could

terminate the Agreement merely by giving 30 days written notice.

Additionally, the Agreement includes a mandatory arbitration clause that provides:

> Arbitration.  In the event of any dispute, claim or controversy concerning, arising out of or relating to this Agreement, its effect, the breach thereof, or the transactions contemplated by it, the same shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

The arbitration clause states that the arbitration proceedings must take place in Indianapolis, Indiana, and that the "results of the arbitration shall be final and binding." There are no exceptions or limitations to the Agreement's arbitration clause.  The Agreement also provides that it "shall be governed by and construed in accordance with the laws of the State of Indiana, without regard to principles of conflicts of law thereof." In addition, it states that, to the extent there are any legal proceedings that arise or relate to the Agreement, they "shall be brought in the United States District Court for the Southern District of Indiana or in any Indiana State Court sitting in Marion County, [Indianapolis], Indiana, and no other forum."  Finally, Joiner and Craig are the persons who signed the Agreement.

Plaintiffs have sued Defendants for (a) tortious interference with contractual relations, and (b) breach of duty of good faith and fair dealing.  Plaintiffs' tortious interference claim is based on their allegations that Defendants terminated the Agreement for "an unlawful purpose" and "without right or justifiable cause."  Plaintiffs' good faith and fair dealing claim also is based on the Agreement's termination.  They allege Defendants "in 'bad faith' attempted to terminate the contract between Plaintiffs and Defendants," and did so "to punish plaintiffs" for filing the complaint with the

Department of Insurance. Plaintiffs seek compensatory and punitive damages, attorneys' fees, and costs.

Defendants assert that because Plaintiffs' claims allegedly relate to the Agreement, and the Agreement contains a broad mandatory arbitration clause, Plaintiffs must submit their claims to arbitration. Further, they assert, because the Agreement also includes a forum selection clause, any judicial proceedings would have to take place in state or federal court in Indianapolis. Finally, if there were no arbitration or forum selection clauses in the Agreement, Defendants contend dismissal would be appropriate based on the merits, because the Agreement could be terminated with or without cause simply by providing 30 days written notice, and Plaintiffs' own allegations show that is precisely what happened here.

Therefore, in accordance with 9 U.S.C. § 1, et seq., Defendants request that the court dismiss this action without prejudice and order that Plaintiffs bring their claims, if at all, through arbitration. Should the court decide that it needs to go beyond the arbitration clause, Defendants request a transfer of venue pursuant to the forum selection clause and 28 U.S.C. § 1404 to federal court in Indianapolis. Alternatively, if the court concludes that it would be proper to rule on the merits at this juncture, Defendants request dismissal for failure to state a claim in accordance with Federal Rule of Civil Procedure 12(b)(6).

The court concludes that it need go no further than the Arbitration Clause contained in the Agreement to resolve this matter.

**STANDARD OF REVIEW AND ANALYSIS**

The arbitrability of a claim brought in federal court is governed by Section 2 of the Federal Arbitration Act (FAA) which provides, in pertinent part, that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (2007).

Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland v. Keating*, 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998). This court has recognized the strong federal policy favoring enforcement of arbitration agreements, and is acutely aware of the Supreme Court's requirement "that [courts] 'rigorously enforce agreements to arbitrate.'" *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

The FAA does not give a district court any discretion, "but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4). By enacting the FAA, Congress has declared a national policy strongly favoring arbitration. *Municipal Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986).

A party to a contract containing an arbitration clause may not simply ignore the

clause and resort to the courts. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 245 (5th Cir. 1986). In fact, even when a party claims the contract itself was fraudulently induced, such a claim does not affect the parties' obligation to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967).

As provided for in Section 2 of the FAA, the contract in dispute must evidence a transaction involving interstate commerce. The Supreme Court has recognized that Congress, in enacting the Federal Arbitration Act, meant to exercise the full extent of its powers under the commerce clause of the Constitution to ensure that the FAA applies to any arbitration contract involving interstate commerce. *Allied-Bruce Terminix Companies Inc. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753 (1995). The transaction in this case constituted a transaction concerning insurance solicited in Mississippi and underwritten in Indiana and elsewhere imbuing it with the necessary interstate character. Further, Plaintiffs have not disputed that this matter involves interstate commerce within the meaning of the FAA. *See also Price v. Credit Acceptance Corp.*, 2010 WL 2400464 at *2 (S.D. Miss. June 11, 2010) (holding contract involved interstate commerce where parties were citizens of different states and Michigan law governed contract); *Bell v. Koch Foods of Miss., LLC*, 2009 WL 1259054 at *2 (S.D. Miss. May 5, 2009) (explaining interstate commerce includes "contract relating to interstate commerce").

To determine whether parties should be compelled to arbitrate involves a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id.* at

258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

Arbitration clauses that apply to "all claims, demands, disputes or controversies of every kind or nature" are deemed to be very broad and cover all possible claims that might arise. *See Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986); *In re Sedco, Inc.*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[i]t is difficult to imagine broader general language than . . . 'any dispute'") (quoting *Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2nd Cir. 1979)). Any doubt concerning the scope of an arbitration clause must be resolved in favor of coverage. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000); *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983); *Mississippi Ins. Managers, Inc. v. Providence Washington Ins. Co.*, 72 F. Supp. 2d 689, 695 (S. D. Miss. 1999).

The court first has to apply state law to decide whether the agreement to arbitrate is valid. *Guy v. Quality Health Servs., Inc.*, 553 F. Supp. 2d 674, 677 n.2. Under Mississippi choice of law rules, a contract's choice of law provision generally is enforceable. *PIC Group, Inc. v. Landcoast Insulation, Inc.*, --- F. Supp. 2d ---, 2010 WL 3452344 at *4 (S.D. Miss. Sept. 1, 2010) (citing Restatement (Second) of Conflict of Laws § 187(2) (1971)). Thus, under Indiana law, which governs the Agreement, a contract requires only "reasonable certainty in the terms and conditions of the promises made" to be enforceable. *Conwell v. Gray Loon Outdoor Mktg. Group, Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

The Agreement certainly meets this standard. It clearly sets forth the contract's

key terms, such as the work that was to be performed, the amount and timing of compensation to be paid, the manner in which it could be terminated, and the way in which disputes relating to the Agreement must be resolved.  Indeed, Plaintiffs do not assert that the Agreement was invalid or unenforceable.  To the contrary, Plaintiffs contend that the Agreement was in effect, that Defendants interfered with the contract "without right or justifiable cause," and cancelled "the contract between Plaintiffs and Defendants" in bad faith.

The second question is whether the claims fall within the scope of the Agreement's arbitration clause.  Courts addressing this issue generally apply state law while, at the same time, giving "due regard" to the FAA's "policy favoring arbitration."  *Bell,* 2009 WL 1259054 at \*3 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d at 258); *see also, e.g., Guy*, 553 F. Supp. 2d at 677 n.2.  In this instance, state and federal law are in accord, as Indiana law "recognizes a strong policy favoring the enforcement of arbitration agreements."  *Koors v. Steffen*, 916 N.E.2d 212, 215 (Ind. Ct. App. 2009); *Natare Corp. v. D.S.I. Duraplastec Sys., Inc.*, 855 N.E.2d 985, 986 (Ind. 2006) ("We have consistently supported an Indiana policy that favors both arbitration as a means of dispute resolution and the enforcement of arbitration agreements.").  As a result, under both federal and Indiana law, courts must resolve any doubts about the scope of an arbitration clause in favor of arbitration.  *Guy,* 553 F. Supp. 2d at 676; *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1242 (Ind. Ct. App. 2010) (explaining "every doubt [is] to be resolved in favor of applying arbitration").

The arbitration clause here requires "any dispute, claim or controversy concerning, arising out of or relating to this Agreement, its effect, the breach thereof, or

the transactions contemplated by it" to be "settled by arbitration." The Supreme Court, Fifth Circuit, and other courts have characterized clauses that require the arbitration of "any and all" claims and disputes "arising out of or related to" contracts as "broad." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (explaining clauses including terms "arising out of" and also "relating to" are broad and "capable of an expansive reach") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)); *see also, e.g., Guy*, 553 F. Supp. 2d at 679 (explaining clause requiring arbitration of "any and all claims, disputes, or lawsuits" contained "broad wording"); *Prime Vision Health, Inc. v. Ind. Eye Clinic, P.C.*, 2000 WL 977397 at *3 (S.D. Ind. July 13, 2000) (applying Indiana law) (describing as "broad" clause with phrase "arising out of").

    Plaintiffs' contend that the arbitration clause does not apply to their claims because they did not bring a breach of contract action. This contention must fail. The Agreement's arbitration clause does not apply merely to breach of contract claims. By its plain wording, the clause covers any dispute "concerning, arising out of or relating to this Agreement, its effect, the breach thereof, or the transactions contemplated by it." As stated above, arbitration clauses such as this one "are deemed to be very broad and cover all possible claims that might arise." *Jones*, 2010 WL 2545462 at *4 (S.D. Miss. Jun. 18, 2010); *see also Price*, 2010 WL 2400464 at *3 (holding laundry list of claims had to be arbitrated because all were "premised upon" contract); *Guy*, 533 F. Supp. 2d at 679 (explaining party could not avoid arbitration merely by asserting claim for accounting). Where, as here, the contract contains such a broadly worded clause, "arbitration should not be denied 'unless it can be said with positive assurance that [the]

the transactions contemplated by it" to be "settled by arbitration." The Supreme Court, Fifth Circuit, and other courts have characterized clauses that require the arbitration of "any and all" claims and disputes "arising out of or related to" contracts as "broad." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (explaining clauses including terms "arising out of" and also "relating to" are broad and "capable of an expansive reach") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)); *see also, e.g., Guy*, 553 F. Supp. 2d at 679 (explaining clause requiring arbitration of "any and all claims, disputes, or lawsuits" contained "broad wording"); *Prime Vision Health, Inc. v. Ind. Eye Clinic, P.C.*, 2000 WL 977397 at *3 (S.D. Ind. July 13, 2000) (applying Indiana law) (describing as "broad" clause with phrase "arising out of").

    Plaintiffs' contend that the arbitration clause does not apply to their claims because they did not bring a breach of contract action. This contention must fail. The Agreement's arbitration clause does not apply merely to breach of contract claims. By its plain wording, the clause covers any dispute "concerning, arising out of or relating to this Agreement, its effect, the breach thereof, or the transactions contemplated by it." As stated above, arbitration clauses such as this one "are deemed to be very broad and cover all possible claims that might arise." *Jones*, 2010 WL 2545462 at *4 (S.D. Miss. Jun. 18, 2010); *see also Price*, 2010 WL 2400464 at *3 (holding laundry list of claims had to be arbitrated because all were "premised upon" contract); *Guy*, 533 F. Supp. 2d at 679 (explaining party could not avoid arbitration merely by asserting claim for accounting). Where, as here, the contract contains such a broadly worded clause, "arbitration should not be denied 'unless it can be said with positive assurance that [the]

arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Guy*, 553 F. Supp. 2d at 676 (applying "broad wording of the arbitration agreement") (quoting *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

Plaintiffs' claims here plainly fall within the scope of the arbitration clause in the Agreement. Plaintiffs allege that Defendants tortiously interfered with the Agreement and breached a duty of good faith and fair dealing they allegedly owed under the Agreement. To support these claims, Plaintiffs include in their complaint allegations regarding the formation of the Agreement, their performance under the Agreement, and the Agreement's termination. Plaintiffs even attached the Agreement to the complaint. In short, because the Agreement is so central to Plaintiffs' claims, their lawsuit arises out of or relates to it, and the arbitration clause applies.

The arbitration clause also covers all of the parties to this action. Plaintiffs argue the arbitration clause does not apply to the claims brought by Joiner personally, or against defendant Craig, because neither Joiner nor Craig was a party to the Agreement. However, Plaintiffs allege that the Agreement was a contract between Plaintiffs and Defendants, and that Defendants interfered with the contract and breached a duty they had under it. Given these allegations, the arbitration clause is easily susceptible of an interpretation that it covers all of the parties.

Additionally, this court has previously rejected an argument nearly identical to that advanced by Plaintiffs, holding that equitable estoppel "'prohibits a party from claim[ing] the benefit of the contract and simultaneously avoid[ing] its burdens.'" *Price*, 2010 WL 2400464 at *3 (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d

-10-

260, 268 (5th Cir. 2004)). Thus, the doctrine of equitable estoppel prevents Joiner from denying his obligation to arbitrate, because Joiner cannot contend that he is owed duties or entitled to benefits under the Agreement (as he claims here), while simultaneously denying that he is bound by the Agreement's arbitration clause. *See also Graves v. BP Am., Inc.*, 568 F.3d 221, 223 (5th Cir. 2009) (explaining party "cannot sue under an agreement while at the same time avoiding its arbitration clause"); *see also TWH, Inc. v. Binford*, 898 N.E.2d 451, 454 (Ind. Ct. App. 2008) (holding nonsignatory "cannot both seek affirmative relief from the transaction and disavow the arbitration clause in the purchase agreement); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981) (applying Indiana law) (holding equitable estoppel prevents plaintiff from "hav[ing] it both ways" by asserting claims based on contract while "deny[ing] that [it] is a party to the agreement in order to avoid arbitration").

Moreover, as a defendant, Craig is entitled through equitable estoppel to demand arbitration because the claims against him are based on and refer to the Agreement, and the complaint does not distinguish separately between his actions and those of Performance. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527-28 (5th Cir. 2000) (holding equitable estoppel applies under the intertwined-claims test to allow nonsignatory defendant to compel arbitration). Thus, based on Plaintiffs' express allegations in the complaint and the Agreement's plain language, as well as the fundamental unfairness that would result if all of the claims were not arbitrated, Plaintiffs must resolve their entire dispute with Defendants through arbitration.

Finally, Plaintiffs contend that they should not be required to arbitrate their claims

because the Agreement is both procedurally and substantively unconscionable. There are three reasons their unconscionability argument does not save this case from dismissal. First, Plaintiffs do not limit their procedural unconscionability defense just to the arbitration clause. Instead, they argue that the entire "Producer Agreement is procedurally unconscionable and should not be enforced." Whether the Agreement as a whole is unconscionable, however, is something that must be decided in arbitration. As this court has held, where a plaintiff attacks the entire contract and not just the arbitration clause as unconscionable, that issue belongs "before the arbitrator and not before this court." *Guy*, 553 F. Supp. 2d at 677-78 (citing *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996)); *see also, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006) ("Where claims of error, fraud, or unconscionability do not specifically address the arbitration agreement itself, they are properly addressed by the arbitrator, not a federal court."). Plaintiffs must raise this argument, if anywhere, in arbitration.

Second, Plaintiffs argue that the "undisputed evidence" supports their contention that the Agreement was procedurally unconscionable. In their response, Plaintiffs attempt to show that they were "weaker" than Defendants and were "prevented by the market factors, timing, and other pressures from negotiating more favorable terms"; however, Plaintiffs offer no substantive evidence to support these claims. Plaintiffs' unconscionability defense is inconsistent with the allegation in their complaint, specifically their contention that the Agreement was in effect, but Defendants interfered with and improperly terminated it. Plaintiffs' assertions of unconscionability with no supporting evidence (or even allegations) are not sufficient to invalidate a contract. *See*

*Am. Heritage Life Ins. Co. v. Beasley*, 174 F. Supp. 2d 450, 456-57 (N.D. Miss. 2001) (rejecting unconscionability claim where there was "no evidence . . . before the court" to support it); *see also Steed v. Sanderson Farms, Inc.*, 2006 WL 2844546 at *9 (S.D. Miss. Sept. 29, 2006) (rejecting unconscionability claim where, among other things, plaintiffs produced insufficient evidence that they could not afford arbitration).

Third, Plaintiffs' contention that the arbitration clause is substantively unconscionable because it is inconsistent with Mississippi public policy and undermines their rights under the Mississippi Constitution is also unfounded. The Mississippi Supreme Court has explained that "as a matter of public policy" the state has "long allowed parties to arbitrate their differences and to give effect to an arbitration award." *IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 726 So.2d 96, 103 (Miss. 1998). Mississippi law mandates that arbitration clauses be "'liberally construed so as to encourage the settlement of disputes and the prevention of litigation'" with "'every reasonable presumption . . . indulged in favor of the validity of arbitration proceedings.'" *Id.* at 104 (quoting *Hutto v. Jordan*, 36 So.2d 809, 812 (Miss. 1948)). Thus, Plaintiffs argument that an arbitration clause violates Mississippi law or public policy is not supported by the law. For decades, the Mississippi Supreme Court has ruled to the contrary.

As to the final step in determining whether to compel arbitration, the court must decide whether there are any external legal constraints that foreclose arbitration. *Jones*, 2010 WL 2545462 at *7. Having disposed of Plaintiffs' unconscionability arguments above, there are no other legal constraints to prevent this court from enforcing the arbitration clause contained in the Agreement Plaintiffs voluntarily

executed.

## **CONCLUSION**

Once the court determines that a valid arbitration agreement exists and that the claims presented are arbitrable thereunder, the court has to make a decision as to the course of the litigation before it.  The FAA contemplates that parties that are aggrieved by another party's failure to arbitrate under a written agreement, may file a motion to stay the trial of an action until such arbitration has been had in accordance with the terms of the agreement.  *See*, 9 U.S.C. § 3.   After arbitration, the parties can then file a request with the court to enforce the results of the arbitration.  However, this court follows the practice of dismissing the present litigation without prejudice subject to the refiling of an enforcement action at the conclusion of arbitration, if such is necessary.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion to Compel Arbitration **[#7]** is Granted and the parties are ordered to submit the matter to binding arbitration as per the agreement between the parties.

IT IS FURTHER ORDERED AND ADJUDGED that this matter is dismissed without prejudice subject to a refiling of a future separate action to enforce any arbitration award and that any other pending motions herein are denied as moot.

SO ORDERED AND ADJUDGED, this the 16th day of December, 2010.

>*s/Keith Starrett*
>UNITED STATES DISTRICT JUDGE